UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

THEODORE JEZOWSKI, SR.,
and STEPHANIE JEZOWSKI,

    *Plaintiffs*,

v.

TINA THOMPSON,
and RANDY SCHABEL,

    *Defendants*.

_____ /

CASE NO. 1:16-cv-13242
DISTRICT JUDGE THOMAS L. LUDINGTON
MAGISTRATE JUDGE PATRICIA T. MORRIS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTIONS TO DISMISS OR FOR SUMMARY JUDGMENT**
(Docs. 32, 33)

**I.    RECOMMENDATION**

For the reasons set forth below, the Court recommends that Defendant Schabel's Motion To Dismiss or, in the alternative, for Summary Judgment, (Doc. 32), be **GRANTED**, that Defendant Thompson's Motion for Summary Judgment, (Doc. 33), be **GRANTED**, and that Plaintiff's Complaint, (Doc. 1), be **DISMISSED**.

**II.    REPORT**

    **A.    Introduction**

On September 8, 2016, Plaintiffs Theodore Jezowski, Sr. and Stephanie Jezowski ("Plaintiffs") filed the instant action for damages under 42 U.S.C. §§ 1983 and 1985(3) against Defendants County of Arenac, Tina Thompson, Arenac County Department of

Health and Human Services, Josett Gracey, Matt Engster, Kim Bejcek, Deb Bonnau, Brian Millikin, Steve Yager, Orlene Hawks, Tobin Miller, Arenac County Sheriff Department, Randy Schabel, Ryan Schmidt, and Does #1-50, inclusive. (Doc. 1). Because Plaintiffs proceeded *in forma pauperis*, the complaint was subject to screening under 28 U.S.C. § 1915(e)(2)(B), which requires dismissal to the extent an action sets forth frivolous or malicious claims, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant immune from such relief. On May 15, 2017, I issued a Report and Recommendation ("R. & R.") urging this Court to dismiss the Complaint except to the extent it asserted claims against Defendants Randy Schabel and Tina Thompson ("Defendants") in their individual capacities, (Doc. 26), and on June 13, 2017, this Court issued an Order adopting my R. & R.

Thereafter, Defendants filed the instant Motions To Dismiss or in the alternative for Summary Judgment, (Doc. 32), and for Summary Judgment, (Doc. 33), to which Plaintiff's responded, (Doc. 37). Defendants replied to Plaintiffs' Response on March 21, 2018. (Docs. 38-39). Accordingly, the instant Motions are ripe for report and recommendation.

      **B.**    **Factual Background**

The facts in this case relevant to the remaining claims against Defendants involve the events leading up to the Arenac County Circuit Court's termination of Plaintiffs' parental rights. I must construe these facts liberally. *E.g.*, *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010).

On September 10, 2014, "after a day of homeschool studies and after a home cooked lunch," Plaintiffs' son, Michael, wandered off while they were "replacing a

large pane of glass that had been broken during a recent storm." (Doc. 1 at 3). "[W]ithin minutes," Plaintiffs and their other children "were out . . . looking for him." (*Id.*). Defendant Schabel located Michael at a gas station and passed him off to Deputy Switek, who brought him home "despite having been told by Michael that no one was home." (*Id.*). When Deputy Switek approached the dwelling, he "looked into the home through the windows . . . ." (*Id.*). Michael was then taken to the Sheriff's Department "where they proceeded to question him extensively and detained him for almost an hour and a half without a parent or lawyer present," which Plaintiffs allege constituted an arrest without a warrant. (*Id.*).

"Deputies" then contacted Theodore, Sr., who arrived in "under 10 minutes" as he was "already on his way there to report" Michael's disappearance. (*Id.*). He was greeted by Thompson, "whom [sic] had also been involved in the questioning of Michael." (*Id.*). Thompson later testified that she "received a complaint that a child had been missing for an extended period of time," and was informed when she arrived at the sheriff's department that the deputies had identified the boy. (Doc. 32, Ex. 2 at 15). In Plaintiffs' view, "[t]he fact that Deputies called Theodore, Sr. shows that they had not exhausted their resources for finding [Plaintiffs] and unlawfully and unnecessarily held Michael under arrest as there was no way for him to leave nor did he have any reasonable expectation that he would be allowed to leave." (Doc. 1 at 4).

Thereafter, Defendants followed Theodore, Sr. to his home, where "the children were playing in the yard." (*Id.*). Thompson then "demanded to see the inside

3

of the home" without explanation, and Stephanie refused access absent a warrant or court order. (*Id.*). In response, Defendants told Plaintiffs "they were not allowed to leave the property in any way," and Deputy Schabel "blocked [Plaintiffs'] vehicle in the driveway with his patrol vehicle." (*Id.*). In addition, Stephanie "was threatened with arrest if she called 911 to get the State Police involved, . . ." (*Id.*).

To obtain a court order from the Arenac County Circuit Court, Plaintiffs allege that Thompson "generated a report with allegations that cited the first illegal search" alongside other "false information," and despite Stephanie's offer to "find an alternative place for the children to stay while the situation was discussed," Thompson nevertheless "did not inform the judge that there may be alternative placement and options available to prevent the removal as required by state law." (*Id.*). Rather, Thompson "stated that the only way the children were leaving was with her and that if she was not given entry into the home, she would remove the children." (*Id.*). Thompson, unsurprisingly, remembered this interaction differently, and testified that "when [Plaintiffs] refused entrance to the home" after she "begged them" to let her in, she said "'if you don't allow me in I'm going to call the judge,' and that's all I said to them, . . ." (Doc. 32, Ex. 2 at 27).

In addition to her report, Plaintiffs claim that Thompson included false information in "the paperwork for a removal petition . . . and swore that the facts were accurate." (Doc. 1 at 4). "Said ex parte removals are in violation of Due Process as there is no notice of a hearing or the opportunity to be heard before rights are

4

deprived. . . . Thompson did not follow proper procedure or policies for conducting an investigation and created her own answers for the Safety Assessment." (*Id.*).

After the circuit court issued a removal order, Defendants used it "to unlawfully enter the home and search it when the only reason to enter the home stated on the petition that was permitted was to remove the children." (*Id.* at 5). Because Thompson "testified that the children were waiting outside with belongings packed when she returned with the Order," Plaintiffs contend "there was no reason to enter the home" and "take photos" without their permission. (*Id.*). Five days later, the removal petition was amended "to include Termination of Parental Rights which was not allowed under state law and a previous State Supreme Court Ruling." (*Id.*). Nobody "mention[ed] . . . the fact that Stephanie has Multiple Sclerosis" during the termination hearing. (*Id.*). The circuit court also dismissed Plaintiffs' motion to strike the illegally obtained evidence Defendants used to gain entry to Plaintiffs' home. (*Id.*). "During the Termination Hearing, the evidence gathered from the illegal searches and the legally inadmissible medical diagnosis were allowed to remain and hearsay testimony was also allowed to be presented by" Thompson. (*Id.*). On December 4, 2014, the circuit court terminated Plaintiffs' parental rights. (*Id.* at 6).

### C. Standard of Review

When a movant shows that "no genuine dispute as to any material fact" exists, the court will grant her motion for summary judgment. Fed. R. Civ. P. 56(a). In reviewing such motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

5

The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

    The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D.N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493. And while a pro se party's arguments are entitled to liberal construction, "this liberal standard does not, however, 'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D.N.Y. 2004) (quoting *Jorgensen v.*

6

*Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. The court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

### D. Analysis

Plaintiffs' surviving claims against Defendants are as follows: (1) Defendants unlawfully searched Plaintiffs' home and seized them and their children; (2) Defendants unlawfully seized Michael in detaining him for questioning after visiting Plaintiffs' residence; and (3) by engaging in these actions, Defendants also conspired to deprive Plaintiffs of equal protection. I address each in turn.

### 1. Unlawful Search of Home, Seizure of Children, and Blocking of Driveway

To prevail on a claim under § 1983, a claimant must show a violation of constitutional rights committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiffs contend that Defendants violated the Fourth Amendment in executing the *ex parte* court order to take their children into protective custody. They suggest that Defendant Thompson used illegally-obtained evidence from Deputy Switek's trespass to acquire the court order to take their children. They further aver that Defendant Schabel's later decision to block the driveway with his patrol car—coupled with his and Defendant Thompson's insistence that Plaintiffs not leave the dwelling or call 911—constituted an unlawful seizure because they did not feel free to leave and he produced no arrest warrant. Additionally, Plaintiffs suppose Defendants' entry into the home was unlawful because the children were waiting in the front yard and the court order only authorized entry into their home for the purpose of removing their children, not for inspection. Defendants argue that collateral estoppel bars these claims.[1]

Given certain circumstances, the doctrine of collateral estoppel precludes relitigation of issues raised in previous disputes. The Sixth Circuit has articulated these factors as follows:

> (1) The party against whom estoppel is sought was a party or in privity with a party to the prior action; (2) There was a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; (3) The issue must have been admitted or actually tried and decided and must be

---

[1] Defendant Thompson also contends the law cloaks her with absolute and qualified immunity for any alleged wrongs. Because I find the collateral estoppel line of argument conclusive, I decline to reach these immunity issues.

> necessary to the final judgment; and (4) The issue must have been identical to the issue involved in the prior suit.

*Prokos v. City of Athens*, 118 F. App'x 921, 926 (6th Cir. 2004). This doctrine plainly applies to the question whether Defendants unlawfully searched Plaintiffs' home and seized their children.

The parties do not dispute that the Arenac County Circuit Court dismissed Plaintiff's objections to the searches conducted by Deputy Switek and Defendants. *See* (Doc. 37 at 3) ("Just because one judge ruled that the search was legal, does not mean that the judgment was not an error."). The judge used unequivocal language in denying any implication that Defendants acted improperly:

> Officer looks into the window, DHS arrives, the parents are not cooperative, okay, and that's fine, they have the right to not be cooperative. But at the same time there's an obligation on the part of DHS and enforcement to secure the safety of the children, and therefore, based on those circumstances that were presented, well, I got a call, I think from Ms. Thompson that evening. Met her over at his court house, and after being presented with a petition, and the circumstances, I signed an order that specifically, and unambiguously, authorized DHS to, among other things, enter the premises. . . . I'm going to deny the motion.

(Doc. 32, Ex. 2 at 41-42). Indeed, the circuit court found Deputy Switek's glance through the window justified in light of exigent circumstances, (*Id.* at 40) ("I reference the exigent circumstances rule, which applies here."), and Plaintiffs did not appeal its ruling on this ground, *In re Jezowski*, No. 325112, 2015 WL 4469863 (Mich. Ct. App. July 21, 2015). Although Plaintiffs appealed the resultant termination of their parental rights, the Michigan Court of Appeals upheld the circuit court's ruling. *See generally In re Jezowski*, 2015 WL 4469863, at *3-4 ("Notwithstanding any bond between respondents and the children,

9

termination was necessary to provide the children with a safe environment, stability, and permanency, which respondents were not able to provide."). *See generally* (*Id.* at 40) (reciting Plaintiffs' admissions that the home was in "'deplorable condition, with rotting food," "debris litter[ing] every flat surface," "open containers of food, trash, pots, pans," [c]igarette butts . . . floating in water in the sink," a "clear plastic bag . . . found on the living room floor full of mold," "[h]oles . . . in the walls," "exposed wiring" in the bathroom, and "[n]o bed for the youngest child, sleeping on a pallet with a very dirty floor'"). Thus, Plaintiffs had a full and fair opportunity to litigate the issue, and a final judgment on the merits exists. Moreover, the issue is central to Plaintiff's present claims.

The Fourth-Amendment issue that does not appear to have been raised in the prior proceeding is whether Defendant Schabel unlawfully seized Plaintiffs by blocking their car in the driveway and instructing them not to leave or call 911. Defendant Schabel suggests no seizure occurred, citing *O'Malley v. City of Flint*, 652 F.3d 662 (6th Cir. 2011). In *O'Malley*, the Sixth Circuit held that a police officer had not "seized" an individual by pulling into that individual's driveway behind him, reasoning that "parking behind a vehicle in a driveway does not inherently send a message of seizure because it is how driveways are routinely used." *Id.* at 669. The court noted as well, however, that the petitioner "did not argue below or on appeal that his vehicle was blocked in, and he has not offered any evidence that it was." *Id.* at n.4. And as Judge Gilman noted in dissent, the court only addressed "whether [the petitioner] felt free to leave his Tahoe," not the equally relevant question "whether [the petitioner] felt free to leave the scene generally." *Id.* (Gilman, J., concurring in part and dissenting in part); *cf. United States v. See*, 574 F.3d

309 (6th Cir. 2009) (finding the blocking of a car in a public-housing parking lot to constitute a warrantless seizure). By contrast, Plaintiffs here contend not that they felt confined to their vehicle, but that they felt confined to their home. Perhaps more importantly, numerous indicia of a seizure the *O'Malley* court found lacking are present here, such as "'the threatening presence of several officers'" and "'the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'" 652 F.3d at 668 (quoting *United States v. Jones*, 562 F.3d 768, 772 (6th Cir. 2009) (internal quotation marks omitted)); *see* (Doc. 32, Ex. 2 at 14). I find that, on these facts, Defendant Schabel indeed affected a temporary seizure by blocking Plaintiffs' driveway.

Even so, however, such a seizure was lawful. As the Supreme Court has said, "[w]e have found no case in which this Court has held unlawful a temporary seizure that was supported by probable cause and was designed to prevent the loss of evidence while the police diligently obtained a warrant in a reasonable period of time." *Illinois v. McArthur*, 531 U.S. 326, 334, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001). On these facts, Defendants supplied a judge with probable cause to obtain a warrant—a finding Plaintiffs are collaterally estopped from challenging—and temporarily seized Plaintiffs to prevent them from absconding with the children or tampering with evidence in the dwelling. At no time did they enter and search the home without a warrant, as Plaintiff's readily concede. (Doc. 37 at 3) ("[T]he minute Mrs. Jezowski requested to see the warrant to search the home, neither Deputy Schabel nor Ms. Thompson set a foot closer to the home and both waited for the Removal order."). In light of these circumstances, the temporary detention of Plaintiffs was constitutionally permissible. *See McArthur*, 531 U.S. at 334; *United States*

11

*v. Place*, 462 U.S. 696, 701 (1983) (the "exigencies of the circumstances" may authorize temporary seizure without a warrant); *United States v. U.S. Dist. Court. for Eastern Dist. of Mich., Southern Division*, 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972) ("[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed, . . ."); *United States v. Yett*, 85 F. App'x 471, 474 (6th Cir. 2004) (upholding a temporary seizure before the issuance of a warrant because it "was calculated to prevent the loss of evidence and freeze the status quo" and because "the police were diligently obtaining a warrant that was quickly granted").

The Court should find Defendants entitled to summary judgment on this count.

### 2. Unlawful Child Seizure

Plaintiffs also argue that Defendants unlawfully detained their son, Michael, when they brought him to the sheriff's office after unsuccessfully attempting to locate Plaintiffs at their address. A cause of action under 42 U.S.C. § 1983, however, belongs to the injured party irrespective of that party's legal status or relationship to another. *See id.* (tortfeasors are liable "to the party injured"); *see also, e.g.*, *Cramblit v. Fikse*, 978 F.2d 1258, at *6 (6th Cir. 1992) (unpublished table decision) ("[A]n action under 42 U.S.C. § 1983 inures only to the benefit of one whose own personal constitutional rights were violated."). In the instant case, Michael is not a party, and Plaintiffs prayer for relief in their *individual* capacities for alleged wrongs perpetrated against him. Plaintiffs did not bring suit on their child's behalf. Accordingly, Plaintiffs lack statutory standing to assert such a claim. *Accord, e.g.*, *Southerland v. City of New York*, 680 F.3d 127, 143 (2d Cir. 2012) ("A Fourth Amendment child-seizure claim belongs only to the child, not the parent, although a parent

12

has standing to assert it on the child's behalf."), *cert. denied,* 568 U.S. 1150, 133 S. Ct. 980, 194 L. Ed. 2d 773 (2013); *Pierce v. Stinson*, 493 F. Supp. 609, 611 (E.D. Tenn. 1979) ("[P]arents have no standing to maintain an action in their own behalf to recover for the deprivation of the civil rights of their children."). Accordingly, the Court should dismiss this count with prejudice. *See Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 391 (6th Cir. 2016) ("If a plaintiff lacks statutory standing—in other words, does not have a cause of action—the proper course is to dismiss for failure to state a claim.").

### 3. Conspiracy To Interfere with Familial Rights

Plaintiffs lastly aver Defendants "conspired to go enter and search the premises of [their] home, hold [them] under arrest . . . and unlawfully seize five children . . . beyond a reasonable period without exigent circumstances," (Doc. 1 at 7), which I construe as a claim under 42 U.S.C. § 1985(3).[2] In Plaintiffs' view, Defendants "engaged in said conspiracies for the purpose of depriving [them] of equal protection" under the law, and were "motivated by invidious discrimination against Plaintiffs on the basis of a perceived disabled status, as well as socio/economic status as evidenced by comments made in reports and testimony." (Doc. 1 at 7). To this, Defendant Schabel suggests Plaintiffs do not belong

---

[2] Some uncertainty remains as to what exactly Plaintiffs mean in accusing Defendants of "conspiracy."(Doc. 1 at 7-8). On the one hand, the preceding sections adequately address their use of the term to the extent it may refer to violations of Plaintiffs' substantive rights. On the other hand, and to the extent it may refer to criminal violations, Plaintiffs lack standing to enforce the statutes they invoke. *E.g.*, *Pickett v. Marzano*, No. 16-11353, 2018 WL 1077362, at *11 (E.D. Mich. Jan. 24, 2018), *R. & R. adopted,* No. CV 16-11353, 2018 WL 1071918 (E.D. Mich. Feb. 27, 2018) ("Federal criminal statutes are enforced by way of a criminal action instituted by the United States, not by private citizen[s].").

13

to a suspect class, while Defendant Thompson notes the absence of any suggestion she and Defendant Schabel had an agreement to do anything unlawful. Both defendants are correct.

"Unlike § 1983, § 1985(3) does not provide a cause of action for the deprivation of independent rights 'secured by the Constitution and laws.' Instead, it prohibits private conspiracies intended to prevent persons or classes of persons from the equal exercise of any of their civil rights." *United Broth. of Carpenters & Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 841 (6th Cir. 1983). Specifically, the successful plaintiff will show "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Id.* at 828-29. Not every class of persons receives protection under § 1985(3), for the Sixth Circuit has clarified that a "class protected by section 1985(3) must possess the characteristics of a discrete and insular minority, such as race, national origin, or gender." *Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc.*, 32 F.3d 989, 994 (6th Cir. 1994) (citing *Hicks v. Resolution Trust Corporation*, 970 F.2d 378, 382 (7th Cir. 1992)).

Plaintiffs' complaint and later submissions, charitably read, attempt to make out allegations of discrimination against them based on their poverty and disability. Neither descriptor marks a "discrete and insular minority," *id.*, and as such their claim must fail. *See, e.g.*, *Bartell v. Lohiser*, 215 F.3d 550, 561 (6th Cir. 2000) (denying the plaintiff's § 1985(3) claim because "the Supreme Court has not conferred suspect or quasi-suspect

14

status on statutory classifications covering the disabled"); *Browder v. Tipton*, 630 F.2d 1149, 1150 (6th Cir. 1980) ("[T]he class of individuals protected by the 'equal protection of the laws' language of [§ 1985(3)] are those so-called 'discrete and insular' minorities that receive special protection under the Equal Protection Clause because of inherent personal characteristics."). Additionally, Plaintiffs offer only conclusory claims that Defendant Thompson and Defendant Schabel ever agreed to do anything, let alone something violating Plaintiffs' rights. (Doc. 1 at 6-8); *see McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (undeveloped arguments are waived). Although Plaintiffs allude to "comments made in reports and testimony" as evidencing their claims, (Doc. 1 at 7), they do not point to any particular statements or testimony. And I discuss above, Defendants' conduct did not violate the Constitution, nor does any improper or foolhardy intent appear to have colored their actions. *E.g.*, (Doc. 32, Ex. 2 at 31) ("When they would not allow me in the home, and we had concerns that the home was dirty, and that the child had been missing for a substantial amount of time, then I became concerned as to why they would not let me in the home.").

Because Plaintiffs do not belong to a suspect class—and because they outline their conspiracy-based allegations in only the barest of terms—the Court should summarily dismiss Plaintiffs' § 1985(3) claim.

### E. Conclusion

For the reasons stated above, the Court recommends that Defendants' Motions (Docs. 32, 33) be **GRANTED**, and that Plaintiff's Complaint (Doc. 1) be **DISMISSED**.

### III. REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  May 18, 2018                             S/ Patricia T. Morris
                                                Patricia T. Morris
                                                United States Magistrate Judge


## CERTIFICATION

    I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.  A copy was also sent via First Class Mail to Plaintiffs at 1200 Lake Lansing Road, Lansing, MI 48906.

Date: May 18, 2018                              By s/Kristen Castaneda
                                                Case Manager